May it please the court, I'm Thomas Mosley, counsel for the petitioner Mahesh Tejwani. I'd like to reserve three minutes for rebuttal. That's fine. Thank you, Mr. Mosley. At issue in this case is whether the law will be changed retroactively to make Mr. Tejwani deportable for conviction of an aggravated felony, excuse me, conviction of a crime involving moral turpitude when at the time of his guilty plea, a fortiori from controlling precedent, now some 40 years duration, Mr. Tejwani's offense was not a crime involving moral turpitude. And that controlling board precedent to which I refer is, of course, the matter of Sloan, in which the board in 1966 held that his prison of felony, a far broader offense than Mr. Tejwani's offense under the New York statute, was not a crime involving moral turpitude, a decision that was plainly left undisturbed by Attorney General Clark in 1968 when he reversed another part of that decision. And I think it's important to focus on the essential distinctions about why, in effect, the New York statute is a lesser statute than misprision of felony. Are you accepting the board's most recent interpretation that this is a crime, that money laundering is a crime involving moral turpitude? I'm not accepting that, Judge Fuentes, but I'm not accepting that. But you're saying if we do, you can't have retroactive application? Yes, in effect. In other words, if you agree with me on non-retroactivity, you don't have to reach the second issue of whether it is or it isn't. And misprision involves concealment of a felony from the authorities and a knowledge that it is a felony. The New York statute involved here requires only concealment of proceeds. It doesn't require concealment from the authorities, and it doesn't require knowledge that, because of the breadth of the statute, it doesn't require knowledge that the proceeds are even from a felony, much less a crime involving moral turpitude. I mean, the New York statute literally says all you have to show is knowledge of any criminal conduct, that the proceeds are from any criminal conduct in New York, and that covers the whole range of crimes defined by the state of New York. So my, and if you go to the fundamental principles with respect to retroactivity, and I think the Ninth Circuit decision in Miguel Miguel lays those out pretty clearly, and this Court's more recent decision in Atkinson does that as well in terms of the basic principles. We obviously have no change in the statute that would provide a basis for retroactivity. Indeed, there were two major changes in the immigration law since Sloan was handed down, and they didn't even purport to reverse Sloan. And we have a radical change in the, I submit, in the underlying standard here, because at the time of his guilty plea in 2000, it wasn't a deportable offense as conviction of a crime involving moral turpitude. Now there is, and obviously there's a tremendous burden imposed upon Mr. Tejuani and his family, his citizen wife and two citizen children, of the draconian penalty of deportation. It may not be fair to do that, it may not be the nicest thing, but what's wrong with applying the current standard that the BIA has announced? Because, in effect, you are, just as in Atkins, radically changing the consequences of controlling of past events. The BIA decision came down in 2007, the guilty plea was in 2000, and it is, I submit, contrary to fundamental precepts of fairness, generally speaking, to apply this retroactively. And those are the concepts that the Ninth Circuit focused on in Miguel in, excuse me, in not allowing retroactivity. And we're not, this isn't filling any particular gap, it's simply turning the ship of state, so to speak, 180 degrees around in making this retroactive, in making this retroactive. And I think under these circumstances, the fundamental rule or presumption against retroactivity should apply. Now this obviously doesn't mean that the government can't have a rule prospectively, and indeed this is a fairly limited effect, I mean, a profound effect, obviously, on Mr. Teshawani and his family, but a limited effect in terms of ultimate enforcement goals, particularly since this New York statute, 470.10, has been. The basis of your argument, though, is simple fairness, it's just that there's no legal obligation on our part to go back to the original standards. No, no, quite the contrary, Judge Fuentes. It is fundamentally grounded in legal analysis, starting years ago with the Chenery case, which recognizes that rules may be changed and indeed changed retroactively by adjudication, which is what we have here. But nevertheless, as the Ninth Circuit. This is true in an immigration context. It, it, I don't think you have to go so far as some of the more recent case law suggests, such as the, as I believe Judge Scalia's opinion in Bowen suggests, that agencies can't, at least on the rulemaking side, engage in retroactive application of rules unless they're specifically delegated to have that power. Now Chenery says that retroactivity through adjudication is subject to the same kind of concerns that the Ninth Circuit did in McGwell, McGwell, in refusing to accept the Attorney General's reversal of precedent less longstanding than the one that we have here, which dealt with whether a crime was a particularly serious crime or not. Here we have all, we have all, all of the McGwell, McGwell factors point against retroactivity, and those are solid legal factors. I'm not saying, oh no, it's inequitable or it's unfair, but we have an evolving jurisprudence, just as we did in Atkinson with respect to statutory applicability, that limits retroactive application of, of, of adjudicatory rules that, in this case, reverse a long line, reverse something that's been a precedent for, you know, roughly 40 years. You make a big point about the retroactivity of the Robles case, but I see the BIA's decision as being a rather bleak reference to that case, and there are string sites of, of various cases that supported their findings. Well, most of those cases, we discussed those cases at, at length in our brief. The two that I think, in, in terms, the two that I think in terms that we should probably address, Judge Fischer, first of all, well, first of all, Robles itself doesn't say we're making this retroactive. I know. Ro, Ro, Robles, excuse me, Robles, use that silence. It's funny. Robles, Robles, this reverses, just reverses Sloan on the issue of misprision. Correct, but it doesn't say we're making that rule retroactive. Correct. And, and Robles itself is now on petition for review. But your argument is that, your argument is that the, the BIA made Robles retroactive and overturned Sloan, but it was a very, I mean, it was just one of the many cases that they cited in support of their decision on a different statute, which was the New York statute. But, but the, the, the, the New York statute, the New York statute really is a fortiori. I mean, the, the, the board's. That's your argument. It, it is my argument. You argued that once and then you took that back a little bit. No, no, but it, it, it, it is my, it is my argument, Judge Fischer, that, that, that, that it is fully, that, that it is fully, that, that it's fully a fortiori. I mean, it would be like having a, a, a court holding that under a statute prohibiting the sale of intoxicating liquor, 3.2 beer isn't prohibited, and then turning around and saying, but 2.0 beer is prohibited. It's that degree of a fortiori. And again, I think it's important to recognize that the New York statute doesn't require concealment from the authorities. It requires only concealment of proceeds and has a far less standard of, of, of, of knowledge involved. I think your, your, your, your argument, I think we, we, we've got on the retroactivity. Okay. But since your time is winding down, I thought you might address the other important aspect of this case, whether money laundering is a crime of moral, I think. Well, if, if we, if we, if, and if we take that, Judge Fuentes, I think it's important to recognize the fundamental flaw in the current board decision. They go off at great length in, they adopt the categorical approach. Obviously, we know what the categorical approach is where you're limited to the minimum legal elements. And their, their defense, their argument, the board's argument is, as I understand it, though it's far from clear, is that there's an adverse impact on law enforcement. There's an interference with law enforcement. That's not a necessary legal element of the New York statute. New York knew how to create obstruction of justice statutes, but that is an element. But that isn't an element here. And that's, and that's really fundamentally at variance with, with other board precedent. The matter of Espinoza case, which we cite again a board precedent, talks about misprision of felony as to whether misprision of felony is a crime, is an aggravated felony of relating to obstruction of justice. And they say that while conceivably it's a factual matter, it might result in obstruction of justice. It's not a necessary legal, legal element. But the statute does involve concealment. The statute does involve concealment to be sure, but it's not, it does not involve, unlike misprision, concealment from the authorities. And it does not have any specific legal requirement of an actual obstruction of an investigation. Is it fair to read dishonesty into the statute? But as I think Judge Reinhart very convincingly said, that if we're going to make dishonesty the standard for crimes involving moral turpitude, then virtually every crime becomes a crime involving moral turpitude. And that's, and that's in Navarro, in the Ninth Circuit decision in Navarro, and that's, and that's fundamentally illogical. But I think, I think here what's important is to see that the linchpin of the board's decision, the linchpin of the board's decision as an adverse effect upon an investigation is not a legal element of that offense. I mean, there are many crimes. Gambling can produce horrible results in families as a factual matter, but gambling's not a crime involving moral turpitude. Illegal possession of a weapon can have horrible consequences, but that's not a crime involving moral turpitude. So you say that the, they're restricted to the elements of the statute. I am saying that I'm. But their analysis went young. Absolutely, Your Honor. What impact, if any, and I'm sure you're familiar with this, as learned as you are in this area of the law, what impact, if any, does the Attorney General's recent decision in Silva Trevino have on our analysis? Well it takes this court to task for its application of the categorical approach, erroneously, and is the subject of an extensive motion to, for reconsideration in light of the lack of opportunity of any of the parties to have a meaningful input. And I think it is fundamentally wrong in suggesting. Does it have any impact on our analysis of this case? If it's, no, because I think it's, it contradicts controlling precedent in this circuit on going to the minimum legal elements for making an, excuse me, making a moral turpitude determination. Mr. Mosley. Thank you very much. We'll get you back on rebuttal. Mr. Stanton. Good afternoon, Your Honors. May it please the Court. My name is Beau Stanton. I'm here today on behalf of the Attorney General. There are three issues in this case. One, whether or not Petitioner's conviction for money laundering in the second degree is a crime involving moral turpitude. Second, whether or not he is eligible for cancellation of removal. And third, whether or not his removal proceedings should have been terminated. As to the first issue, the Board in this case properly concluded under the categorical approach that the crime for money laundering which Petitioner was convicted for is a crime involving moral turpitude. Under the categorical approach, you do look at the elements of the offense and not the specific acts of the crime committed. In this case, to be convicted of money laundering, the offense requires that an individual exchange one or more monetary instruments, which are the proceeds to specify criminal conduct. When that person knows that the monetary instrument exchange are proceeds of any criminal conduct and intentionally makes the exchange to conceal and disguise the nature, the location, the ownership of those proceeds. In short, the Petitioner knew where these criminal proceeds or the proceeds came from and intentionally tried to disguise them. In this case, the Board concluded in their precedential decision that this involved moral turpitude for two reasons. First, it said that this crime impairs and obstructs the function of the government, mainly the ability to detect criminal activity. That's what happened in this case. But isn't that going beyond the categorical approach? No, Your Honor. The reason why... Don't we just look at the elements of the statute to determine whether it is a crime of moral turpitude? You look at the elements that help define what the crime is, but then you look at what the nature of the crime is. And that is what the Board did in this case. What is the nature of the crime? The nature of the crime is inherently deceptive, inherently dishonest. That was what the Board did. They looked at the elements, defined the crime, and then explained why it did necessarily involve moral turpitude. It did not go beyond the elements whatsoever. They just looked at them and defined them and explained why. And the second reason why they also thought this involved moral turpitude is that it was an affirmative act to conceal criminal activity. That is exactly what money laundering is. It's taking dirty money and making it clean. Now, if I go in a store and put a bunch of stuff under my jacket, like shoplifting, however valuable it may be, aren't I concealing and disguising property that I want to walk out with? Is that a crime of moral turpitude? Well, Your Honor, I'm not at liberty to speak on behalf of the Board, and I'm not sure how the Board would approach that exact particular factual situation. Hypothetically speaking, Mr. Mosley said, if you go down this road, everything is going to be a crime of moral turpitude. We realize heavily on Miguel Miguel, which is a Ninth Circuit case, where the Court was trying to say that, yes, not every crime somehow interferes with government of conduct. But in this particular case, the reason why this is distinct from that court decision is that this crime is inherently dishonest. This crime requires the affirmative actions of a person to disguise and conceal where these proceeds came from. The crime itself is inherently dishonest, and that's the reason why the underlying offense doesn't matter what crime, what proceeds, or excuse me, what proceeds the crime came from, but it only matters the crime itself, money laundering, is inherently dishonest. So thus referring back to your hypothetical, it's not applicable to this situation because someone who's shoplifting. Shoplifting is inherently dishonest, isn't it? I can't speak for the Board as I just said, Your Honor, but I think that maybe it is inherently dishonest, yes, to steal, yes. Would you say shoplifting is a crime involving moral turpitude? Like I said, Your Honor, I'm not really sure at this point what the Board would say, and I know under this Court's precedent, knowingly receiving stolen property, as you said in Dilan-Rezno, is a crime involving moral turpitude, so perhaps relying on that case, it might be possible to find that shoplifting is indeed a crime involving moral turpitude. But that's the reason why this case is so clear-cut for this Court, is because if you just look at De Leon, where this Court found that a person who knowingly received stolen property and kept that property, that was a crime involving moral turpitude. This is a more severe example. Not only did the petitioner in this case knowingly receive proceeds from any criminal activity, but in this case it was from drug trafficking, then he took those proceeds and then disguised them. That is a much more severe crime. I think you're getting away from the categorical approach, because now you're going into where the money came from, and my understanding of the categorical approach is you just look at the statute and the elements of the statute, and you determine whether it's a crime involving moral turpitude. You're correct, Your Honor, and I'm sorry if I implied that I was looking to the underlying offense in this case, and I was not suggesting that. I was actually trying to suggest what you're trying to suggest, or stating that it doesn't matter what the crime was from which the proceeds came from. The fact is that money laundering itself is an inherently dishonest activity, and if you go back to the De Leon case, this Court specifically said that if knowingly possessing stolen goods is a crime of moral turpitude, it follows that possessing stolen goods that one believes probably were stolen is such a crime, too. But both crimes speak with equal force to the honesty of a person. That is what money laundering is doing also. This is a dishonest action by the petitioner. There's no way around it, and that is why the board found that this was a crime involving moral turpitude. And also, this Court must give Chevron deference to the board because it was a reasonable interpretation of whether or not this crime of money laundering does include, or is a crime involving moral turpitude. But turning to the petitioner's retroactivity argument, that argument fails for a number of reasons. First, he failed to exhaust that argument to the board, therefore this Court is precluded from passing judgment on that argument because the board did not get it in the first instance. Overlooking that failure to exhaust that issue, the basic premise of his argument is fundamentally flawed because he says emphatically without a doubt that matter of Sloan is controlling in this case. Therefore, his crime would not be one involving moral turpitude, according to Sloan. However, this Court remanded this case back to the board because they summarily affirmed the immigration judge's decision where he discussed money laundering because, one, that this is not controlled by any sort of board or federal case precedent, and second, that this was a case of first impression. So the fact that the petitioner can get up here and say that this is controlled by matter of Sloan is clearly wrong, because otherwise, why didn't the board apply its own precedent? This Court even noted in a footnote that the immigration judge struggled. She said, there's no case law. There's nothing. This has never been decided before. Mr. Stanton, I mean, in a sense of fairness, I mean, do you think it's fair and fundamentally just that he be subject to removal now because the crime that he committed back then has a different definition today, that now it's a crime of moral turpitude where it was not when he previously appeared in court? Your Honor, I would maintain that if the board were to pass this decision in 2000, if they were to decide the decision in 2000 under Sloan, it would still come out the same way because Sloan is not controlling in this case. It is simply a different crime. It is a case that's 40 years old, which the board noted in Matarobles that there had been a lot of intervening jurisprudence both on the board level, on a federal court level, which led them to overturn matter of Sloan. But that doesn't undermine the fact that his basic premise is Sloan because he can't point to Sloan and say that this case is controlling because it's not. Then in addition to that, the board is not applying this case retroactively. If you look at the board's decision, it went through and applied the current principles of how you determine whether or not a crime is one involving moral turpitude. That is what the board did. It set up the framework and applied the facts of this case in that framework. It did nothing out of the ordinary and thus came to this conclusion that this is a crime involving moral turpitude. In addition to that, he relies heavily on a Ninth Circuit case, which is a very, very narrow case. First, the court in that situation said that the reason why it was coming out this way was because in that decision, in that case, the immigration judge had already rendered a decision under old law. Thus, the court knew how the agency would render that decision under the old law because it did. But then it went to the board and the board overturned the IJ's decision because of new precedent. And thus, the court there could point to the IJ decision and say, this is how the agency came out under the old law. You don't have that in this case. You don't know how the agency would have come out under the old law. And that's ignoring the fact that this case isn't controlling. In short, the board properly concluded that the crime for which Petitioner was committed, money laundering in the second degree, does involve moral turpitude. Now, moving on to the second issue, whether or not the Petitioner is eligible for cancellation of removal. Because he was convicted of a crime involving moral turpitude, he cannot establish a continuous presence requirement for cancellation removal because it ended the moment he committed his crime.  Therefore, this issue is clear cut also. He's not eligible for cancellation of removal. And moving on to the third issue in this case, that is whether or not the board erred in refusing to terminate his removal proceedings, this is also a clear cut issue. Because the board in this case relied on its matter of Acosta, its most recent decision in 2007, where it said the only way that it can terminate removal proceedings, an immigration judge can terminate removal proceedings, is if it receives an affirmative communication from the Department of Homeland Security. That is a reasonable interpretation of the statute. That was not done in this case. Petitioner didn't get any affirmative communication from the Department of Homeland Security. They refused to terminate removal proceedings. That was clearly a proper thing to do in this case. Thus, for all these reasons and those contained in Respondent's Brief, this Petitioner's Brief should be denied. And if there are no further questions, I will yield the rest of my time to the Court. Nothing further? Mr. Stanton? Thank you very much. Thank you. Mr. Mosley. I want to address, first of all, this issue that the government makes with respect to exhaustion. And I think the government, obviously not made in a government's brief, which totally So the government may well have waived the waiver argument. But I think if you look at the history of this case, you will see that we submitted our brief to the Board of Immigration Appeals in June of 2006. On the remand, ROBLAS came down in September of 2006. Doesn't say that it's applying the overruling retroactively. And then the Board comes out in February of 2007 with its decision that sub salentio applies the overruling retroactively. So I think we've satisfied any exhaustion requirement as of right, because we argued throughout this case, from the very beginning, from when it was before the immigration judge, that Sloan was controlling and should be followed because this really is a fortiori from Sloan So any exhaustion requirement, even if it hasn't been waived, is fully satisfied under this court's fairly liberal standard in Joseph 465 Fed 3rd, 1234. With respect to Now, in terms of our decision, your preference is that we determine that this is a retroactive application and for a number of cases and  My second, I guess, would be that the Board incorrectly applied the categorical imperative to the New York statute. It did and did and did not and went beyond what the actual minimum legal elements were here. Of course, the third is to disagree with you entirely and agree with Mr. Stanton and reject the petition. Correct. And the other We made two other arguments with one other argument related to retroactivity. With respect to cancellation of removal, Mr. Stanton is correct, the Board, the President of the Circuit, Brasino, precludes a new period from restarting. But our argument is that the seven years' time wasn't cut off because it wasn't until 2007 that the Board determined that this offense was a crime involving moral turpitude and under Adkins and it shouldn't be applied retroactively to cut the time off. Mr. Mosley, before I forget, what is Mr. Tijuani's current status? He's a lawful permanent resident, not in custody at the present time. With respect to the issue of termination for naturalization, we deal here with a garden variety question of crime involving moral turpitude, excuse me, of good moral character where he would have good moral character. There's no per se bar because it's committed more than five years before the application was filed and I would submit that under the dissent in the Acosta case that should be followed. But again, if you accept my first point or even my second point, you need not reach that issue. Thank you very much. Mr. Mosley, thank you very much. And Mr. Stanton, thank you. Thank you both for your very helpful arguments. We'll take the case under advisement in court.